UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------X
UNITED STATES OF AMERICA,

                Plaintiff,                        11 CR 231 (SJ)

      v.

<u>AMENDED</u>
<u>MEMORANDUM</u>
<u>AND ORDER</u>

AVONDALE LOCKHART,

                Defendant.
--------------------------------------------------X
APPEARANCES

RICHARD P. DONOGHUE
United States Attorney
Eastern District of New York
271 Cadman Plaza East
Brooklyn, NY 11201
By: Maria Cruz Melendez
*Attorney for the Government*

FEDERAL DEFENDERS OF NEW YORK, INC.
1 Pierrepont Plaza, 16th Floor
Brooklyn, N.Y. 11201
(718) 407-7419
By: Mildred M. Whalen
*Attorney for Avondale Lockhart*

JOHNSON, Senior District Judge:

       Defendant Avondale Lockhart ("Lockhart") moves this court to grant him

compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) and the First Step Act.

Based on the parties' submissions and the following reasons, Lockhart's motion is GRANTED.

## I.       Background

The Court assumes familiarity with the underlying facts of this case. On February 1, 2013, Lockhart was sentenced to a ten-year mandatory minimum following a guilty plea for possessing child pornography. In total, Lockhart was found to have possessed 15,324 images and at least nine videos containing child pornography. Prior to the instant conviction, Lockhart was found guilty of first-degree sexual abuse for the attempted rape of a former girlfriend in 1999. This conviction served as the predicate offense for Lockhart's mandatory minimum under 18 U.S.C. § 2252(b)(2).

Lockhart's myriad health issues are not disputed by the Government. Lockhart currently suffers from stage three kidney failure, diabetes, hypertension, and a compromised immune system—all conditions that place him at an elevated risk of serious illness or death should he contract COVID-19. Lockhart's weakened immune system is caused by immunosuppressant drugs he must take to ensure his body does not reject the kidney transplant he received in 2008.

Lockhart has had several infractions while incarcerated, mostly related to the possession of pornography or explicit images. For the most part, these images are alleged to have been of adult women. However, in January 2016, a correctional

officer reported finding "62 pictures of under aged girls in swim wear in sexually explicit poses." (Dkt. No. 65-2.) At his disciplinary hearing, Lockhart stated that none of the photos were of underage women. (*Id.*) The Committee ruled:

> Based on the greater weight of the evidence, the UDC finds you in violation of the prohibited act. The reporting officer indicated while searching your property, you had 62 pictures of sexually explicit women in swim wear. You are not authorized more than 25 pictures.

(*Id.*) None of Lockhart's infractions while incarcerated have resulted in the loss of any good time credit and he is currently scheduled to be released on September 20, 2021.

## II.     Discussion

To modify an imposed term of imprisonment under the relevant subsection of Section 3582, a sentencing court must find that A) petitioner has exhausted administrative remedies; B) extraordinary and compelling reasons warrant such a reduction; C) such a reduction is consistent with applicable policy statements issued by the Sentencing Commission; and D) the reduction is consistent with the sentencing factors set forth in Section 3553(a). *See* 18 U.S.C. § 3582(c)(1)(A)(i).

### A.  Exhaustion of Administrative Remedies

A defendant is considered to have exhausted all administrative remedies in an application for compassionate release following "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility." 18 U.S.C. §

3582(c)(1)(A). As Lockhart received no response within 30 days of submitting his application, he is deemed to have exhausted his administrative remedies.

### B.   Extraordinary and Compelling Circumstances

The Sentencing Commission defines extraordinary and compelling circumstances to include a defendant's medical condition, age, family circumstances, or other reasons that alone or in combination with these circumstances are extraordinary and compelling. *See* U.S.S.G. § 1B1.13 App. Note 1(A)(i). Most relevant to Lockhart, Note 1(A) provides that compassionate release may be warranted if the defendant "suffer[s] from a serious physical or medical condition" which "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." (*Id.*)

Numerous courts in this District have found that health characteristics that place an individual at an elevated risk of serious illness or death from COVID-19 can constitute extraordinary and compelling circumstances in the context of the current pandemic, and the Government does not appear to seriously challenge that proposition here. *See e.g.*, *United States v. Copeland*, 03-CR-1120 (FB), ECF No. 312 (E.D.N.Y. May 19, 2020); *United States v. Sedge*, 16-CR-537 (KAM), 2020 WL 2475071 (E.D.N.Y. May 13, 2020); *United States v. Hinton*, 17-CR-432 (BMC), ECF No. 167 (E.D.N.Y. May 12, 2020); *United States v. Asaro*, No. 17-CR-127 (ARR), (E.D.N.Y. Apr. 17, 2020). Additionally, more than a dozen district courts around the country have

recently held that they have the authority to determine what constitutes "other reasons," under § 1B1.13, suggesting an even broader authority to determine what circumstances are extraordinary and compelling. *See United States v. Haynes*, 2020 WL 1941478, 14 (E.D.N.Y. April 22, 2020) (gathering cases).

This Court finds that Lockhart's serious medical conditions in the context of COVID-19 constitute extraordinary and compelling circumstances. Lockhart's immunosuppression medications, stage three kidney failure, diabetes, and hypertension place him among the most vulnerable people to developing serious illness from COVID-19. *See* If You Are at Higher Risk, Centers for Disease Control and Prevention (last accessed on July 2, 2020) https://cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html. The Court takes note of the efforts at the BOP and specifically FMC Devens, as laid out in the Government's briefing, to protect inmates and staff from the virus. However, even with these actions, this Court cannot credit the Government's position that Lockhart is not at "imminent risk of actually contracting COVID-19." (Dkt. No. 65 at 12.) The statistics compiled by Defendant demonstrate just that. As of June 28, 2020, the rate of infection in the Bureau of Prisons is almost *six times higher* than the national average. (Dkt. No. 66-1 at 3.) Accordingly, Lockhart's elevated risk of contracting COVID-19 in combination with his medical vulnerability constitute extraordinary and compelling circumstances.

### C.  Sentencing Commission Policy Statement: Danger to the Community

The relevant Sentencing Commission Policy Statement also requires this Court to consider whether the defendant is a danger to the community. *See* U.S.S.G. § 1B1.13(2). In doing so the Court considers the following factors: 1) the nature and circumstances of the offense; 2) the weight of the evidence against the person; 3) the person's history and characteristics; and 4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. *See* 18 U.S.C. § 3142(g).

It goes without saying that the crime of conviction—possession of child pornography—is a serious crime that is inextricably intertwined with the cruelest possible exploitation of societies' most vulnerable members. However, any threat of a repeat offense by Lockhart upon his release is largely mitigated by monitoring conditions and restrictions on his access to electronic devices. Lockhart's motion must also be evaluated in light of the fact that he is currently scheduled to be released in less than fifteen months, regardless of this Court's decision on the instant motion. But perhaps most demonstrative of Lockhart's ability to live under supervision without reoffending for the remainder of his sentence is the fact that he has already done so. Lockhart remained at liberty under pretrial supervision for almost two years without incident at the very address he has proposed to return to.

Turning to Lockhart's institutional record, the Court cannot credit the Government's contention that Lockhart possessed sexually explicit photographs of

underage girls while incarcerated. The matter was brought before a disciplinary committee who reviewed the pictures and ruled on the matter. Their decision states that Lockhart was in possession of "62 pictures of sexually explicit women in swimwear" and that he was "not authorized more than 25 pictures." (Dkt. No. 65-2.) Their use of the word "women" is informative given the question of the age of the women was squarely before them. (*Id*.) One would further presume that had the committee found the women to have been underage, the focus of their reprimand would not merely be that Lockhart had more than the authorized number of pictures. Notwithstanding the allegation by one correctional officer, the Court credits the finding of the BOP's administrative process. Tellingly, neither this infraction nor any of the others raised by the government were deemed serious enough by the BOP to withhold any of Lockhart's good time credit, nor was Lockhart ever charged with an additional possession of child pornography crime.

### D.  18 U.S.C. § 3553(a)

The Government contends that Lockhart's release poses a serious risk to public safety, however empirical data and Lockhart's specific circumstances weigh against this position. Those guilty of non-production child pornography offenses, like Lockhart, have among the lowest new offense recidivism rates of any offenders. A 2012 study by the U.S. Sentencing Commission found that the sexual recidivism rate of this cohort was 7.4 percent. U.S. Sentencing Comm'n, Report to the Congress: Federal     Child     Pornography     Offenses,     300     (December     2012),

https://www.ussc.gov/research/congressional-reports/2012-report-congress-federal-child-pornography-offenses. Studies like this support prior concerns by courts that child pornography penalties are driven by "the general revulsion that is associated with child exploitation-related offenses" as opposed to "any sort of empirical data." *U.S. v. Johnson*, 588 F. Supp. 2d 997, 1003 (S.D. Iowa 2008). Courts and policy makers have raised the legitimate concern that the penalties for child pornography offenses fail to account for the varying degree of culpability amongst offenders. In concluding a report on the issue, the U.S. Sentencing Commission found that:

> Numerous stakeholders — including the Department of Justice, the federal defender community, and the Criminal Law Committee of the Judicial Conference of the United States Courts — have urged the Commission and Congress to revise the non-production sentencing scheme to better reflect the growing body of knowledge about offense and offender characteristics and to better account for offenders' varying degrees of culpability and dangerousness.

Report to the Congress: Federal Child Pornography Offenses at 331. Indeed, this finding appears consistent with the attitude of most federal district court judges on the topic. *See* U.S. Sentencing Comm'n, Results of Survey of U.S. Dist. Ct. Judges, Jan. 2010 Through Mar. 2010, Question 1, 8 (June 2010), available at http://www.ussc.gov/Research/Research_Projects/Surveys/20100608_Judge_Survey.pdf (finding among surveyed district court judges: 70 percent believed the guideline ranges for possession of child pornography were too high and 71 percent believed mandatory minimums for receipt of child pornography were too high). With this background, the Court finds that a slight reduction to Lockhart's 10-year

mandatory minimum, is a more accurate reflection of his culpability and the seriousness of his offense. *See* 18 U.S.C. § 3553(a)(2)(A).

Lockhart proved himself able to live a law-abiding life for two years while under pretrial supervision and the Court is convinced that his further incarceration over the next 15 months is not necessary to protect the public. 18 U.S.C. § 3553(a)(2)(C). It is also important to note that Lockhart's guideline range of 78-97 months is substantially lower than the 120-month mandatory minimum he received. Lockhart has already served a sentence greater than the bottom of his range and considering his good time credit, he has served a sentence equivalent to his maximum guideline sentence. Further, Lockhart's health conditions and vulnerability to COVID-19 justify whatever sentence disparity that might arise among similarly situated defendants by his early release. *See* 18 U.S.C. § 3553(a)(6).

### III.    Conclusion

For the foregoing reasons, Lockhart's motion for compassionate release is GRANTED. He is sentenced to time served with a ten-year term of supervised release. It is hereby ordered that as a condition of supervised release, Lockhart must remain on home confinement at the residence of his former roommate until September 20, 2021. All other conditions remain the same. This order is stayed for up to fourteen days, for the verification of the defendant's residence and to make appropriate travel arrangements. The defendant shall be released as soon as a

residence is verified and appropriate travel arrangements are made. There shall be no delay in ensuring travel arrangements are made. If more than fourteen days are needed, the parties shall immediately notify the Court and show cause why the stay should be extended.

Dated:  July 29, 2020
Brooklyn, New York

/S/
Sterling Johnson, Jr., U.S.D.J.

10